UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-cv-22684

ROBERT SCHULTZE,

 Plaintiff,
vs.

2K CLEVELANDER, LLC,

 Defendant.
_____/

## COMPLAINT

Plaintiff, ROBERT SCHULTZE, brings this action against Defendant, 2K CLEVELANDER, LLC ("Clevelander"), and alleges as follows:

### JURISDICTION AND VENUE

**1.** This is an action for damages brought by Plaintiff, ROBERT SCHULTZE ("ROBERT SCHULTZE"), against Defendant, 2K Clevelander, LLC, under, *inter alia*, the Fair Labor Standards Act 29 U.S.C. §§ 201-219 ("FLSA"). Jurisdiction is proper and is conferred on this Court by, *inter alia*, 28 U.S.C. §1331. Venue is proper because the events giving rise to this claim arose in this Judicial District.

**2.** At all times material hereto, Plaintiff, ROBERT SCHULTZE, was a Florida resident and resident of this Judicial District and an "employee" of Defendant as defined by the applicable law referenced herein.

**3.** At all times material hereto, Defendant, 2K Clevelander, LLC ("Clevelander"), was a foreign limited liability company with its principal place of business in South Florida in this Judicial District at or about 1020 Ocean Drive, Miami Beach, FL 33139, engaged in commerce in the field of restaurant, bar, and hotel operations, at all times material hereto was the "employer"

of Plaintiff as that term is defined under the applicable law referenced herein, engaged along with its employees in interstate commerce, and has annual gross sales and/or business volume of Five Hundred Thousand ($500,000.00) Dollars or more.

4. At all times material hereto, Plaintiff was an employee of Defendant protected by the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201-219, and Defendant was an employer of Plaintiff subject to the FLSA, as each are defined under the FLSA. Defendant is covered by the FLSA's Enterprise Coverage.

5. Section 7 of the FLSA provides in pertinent part that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

6. In justifiable reliance upon Defendant's representations and promises, Plaintiff accepted employment and began working for Defendant providing hospitality services. The work performed by the Plaintiff, including barbacking, was directly essential to the business performed by Defendant. Plaintiff was variously titled as a barback, food runner, and busser. He was mistitled at various times. His duties included stocking drinks, carrying food, hauling ice, preparing bars, and other hospitality services.

7. Defendant has knowingly, willfully, and improperly refused to pay Plaintiff his legally entitled wages. Plaintiff was not paid at all for a significant amount of time worked despite having full knowledge of and being notified of same by Plaintiff. Defendant was fully aware that it was not properly paying ROBERT SCHULTZE. The Defendant intentionally and willfully hid

this fact and did not pay Plaintiff the full and proper wages throughout his employment.

8. Plaintiff has complied with all conditions precedent to bringing this suit, or same have been waived or abandoned.

9. Plaintiff has retained the services of the undersigned to represent him in this action and is obliged to pay for the legal services provided.

10. Plaintiff's full employment records are in Defendant's possession and examination of the earnings statements; paystubs; and other documents, together with discovery of amounts (including cash tips) concealed, is necessary in order to calculate full and precise damages.

## COUNT I: FLSA VIOLATION

11. Plaintiff re-alleges Paragraphs 1 through 10 as if fully set forth herein.

12. Defendant failed to pay Plaintiff overtime due pursuant to the FLSA as described in part in Section 7(a)(1) of the FLSA. Defendant failed to pay Plaintiff at least 1.5 x his 'Regular Rate' of pay for all hours worked in excess of forty hours per week. Between the date of Defendant's implementation of its sham 'commission' scheme (discussed below) and the date of Defendant's termination, including the dates of approximately July 18, 2014 through approximately September 16, 2014, ROBERT SCHULTZE worked an average of as much as approximately 55 hours a week but was not paid full overtime for the hours worked in excess of 40 hours each week. Defendant willfully and intentionally refused to pay Plaintiff overtime wages as required by the Fair Labor Standards Act, as Defendant knew of the overtime requirement of the Fair Labor Standards Act and intentionally and recklessly failed to comply with same. Defendant's actions constitute a willful violation of the FLSA. This also includes, *but is not limited to,* all dates of work for which the last element of the FLSA violation occurred on or after July 18, 2014.

13. The method of calculating 'Regular Rate' and 'Overtime Rate' is set forth in the FLSA; the Overtime Rate is 1.5 x the 'Regular Rate'. Between approximately July 18, 2014 through his last day (approximately September 16, 2014), ROBERT SCHULTZE's FLSA 'Regular Rate' of pay was approximately no less than $20 per hour and his FLSA 'Overtime Rate' of pay was approximately no less than $30 per hour. He was never paid overtime hours at an FLSA 'Overtime Rate' at all during the period of implementation of the sham 'commission' scheme and his final day. ROBERT SCHULTZE is owed the difference between the amount *he was actually paid* and the amount that *he should have been paid* if he had been paid overtime at the correct overtime rate for all overtime hours worked.

14. *Schultze was Not Paid Pursuant to a 'Bona Fide Commission Rate' and the Clevelander Cannot Avail Itself of the 207(i) Exemption Affirmative Defense:* Defendant failed to pay Overtime to Defendant by, among other devices, using a fictional commission scheme to pay an arbitrary hourly rate under the guise of a 207(i) commission exemption ("7(i) exemption"). As recognized by a recent U.S. Southern District of Florida opinion analyzing the Clevelander's same commission scheme, in order for the Clevelander to use the 7(i) exemption, it must use a 'bona fide commission rate' and—*must actually utilize the commission rate*—in paying the employee. [1]

---

[1] "**The commission must be a 'bona fide commission rate.' 29 U.S.C. § 207(i).** … [The Clevelander's] Corporate Representative readily admitted that Defendant did not (and still does not) have the records needed to show that Defendant **actually utilized the commission structure** [described by the Clevelander], let alone any commission structure … The Court, therefore, agrees with Plaintiff that **Defendant seeks to 'circumvent FLSA's overtime requirements by presenting a fictional commission scheme to the court' based on paying an 'arbitrary hourly rate.'"** Joseph Flores v. 2K Clevelander, LLC, No. 1:16-cv-24083-UU, Doc. 80 at p.10-12 (S.D. Fla. May 4, 2017) (holding that 7(i) exemption requires that Defendant be paid pursuant to a 'bona fide commission rate' in denying summary judgment as to 7(i) exemption) (emphasis supplied; docket citations omitted) citing Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1256 (11th Cir. 2001)

4

15. *207(i) Exemption Requires that Employees be Paid Pursuant to a 'Bona Fide Commission Rate':* Importantly, the 7(i) exemption affirmative defense requires, among other things, that the Clevelander (i) used an <u>actual</u> methodology or formula that it can fully articulate and prove by clear and affirmative evidence (*the formula to calculate compensation—not merely some amount or percent charged to the customer*); (ii) it implemented and paid the employee using this actual methodology or formula by clear and affirmative evidence; (iii) that this formula and methodology had all of the required characteristics of a 'bona fide commission'; and (iv) that all of the foregoing was used, implemented, and paid such that Defendant paid Plaintiff a 'bona fide commission' for all of Plaintiff's work. [2]

16. *Sham 'Commission' Scheme:* Between implementation of its sham 'commission' scheme and the date of Defendant's termination, including the dates of approximately July 18, 2014 through approximately September 16, 2014, Defendant did not pay ROBERT SCHULTZE any overtime whatsoever, despite that he worked over forty hours per week during each of these weeks. The 'commissions' were in fact not paid according to any formula or rate as to ROBERT SCHULTZE. In fact, he was told that he was a 'barback' but then paid sham 'commissions' as if he were a 'food runner' and *vice versa*. There was no consistency in the amounts or rates and no set formula. The Defendant did not keep records of sales that correlated with each barback and, in fact, *could not do so* because each barback often worked at more than one bar or restaurant on any given shift. Plaintiff did not have any interactions or sell anything directly to customers. The

---

[2] If all of the 'bona fide commission' requirements are met and the employee is actually paid according to the 'bona fide commission rate', the 7(i) Exemption applies if (1) the employer is a retail or service establishment; (2) the regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate applicable to him under 29 U.S.C. § 206; and (3) more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services; (4) all other FLSA requirements are satisfied.

employees were never told what their commission rate was and the fact that this was a sham was hidden from the employees in furtherance of the improper scheme.

17. In fact, many employees were unaware of the scheme because the Clevelander was so thorough in creating its facade. In fact, a legitimate commission formula was not possible because the Clevelander did not keep records of which employees were working on which checks; which employees were linked to a check when shifts changed; which bars, restaurants, and food and drink sales were part of the commission scheme; and whether tips were included. 'Bottle service' was not properly accounted for in the commission 'scheme'. 'Room service' was not properly accounted for in the commission 'scheme'.

18. Amounts that were reduced as 'comps' (check amounts that were reduced or eliminated, *e.g.*, for friends of management) were reduced from the amounts payable to employees—amounting to an improper and arbitrary reduction of compensation from employees.

19. Compensation was also improperly reduced from employee paychecks for employee mistakes. Employees were also not paid interest on 'retroactive payments' and the Clevelander did not keep proper FLSA records for 'retroactive payments'.

20. Moreover, the Defendant included credit card tips in its sham calculation of sham 'commissions', an act that is specifically prohibited (tips are specifically excluded as an amount that cannot be used in a bona fide commission calculation/in satisfying the 7(i) exemption); they must be separated but were not by the Defendant.

21. ***Failure to Compensate for Unrecorded Time & Improper Recordkeeping:*** In addition to not paying an overtime rate for the recorded hours over 40 per workweek, the Clevelander failed to record on average as much as .5 hours and/or as much as 2.5 hours per day. This is in addition to the difference between the 'Overtime Rate' and 'Regular Rate' for every

recorded overtime hour between implementation of its sham 'commission' scheme and the date of Plaintiff's termination, including the dates of approximately July 18, 2014 through approximately September 16, 2014.  This also includes, *but is not limited to,* all dates of work for which the last element of the FLSA violation occurred on or after July 18, 2014.  The Clevelander failed to accurately record time worked and wages paid.  The Clevelander failed to accurately record time worked and wages paid in order to avoid the requirements of the FLSA and further evidences the willfulness of the Clevelander's violation.

22. ROBERT SCHULTZE was told he had to work while clocked out and that *after* 'clocking out' he had to do additional work, depriving him of significant pay. The Defendant systematically forced employees to work while clocked out, including requiring them to 'clock out before cashing out', despite knowing that it would take a significant amount of time for an employee to work off the clock while cashing out.  ROBERT SCHULTZE worked on average as much as .5 hours and/or as much as 2.5 hours per day that were not recorded, between these dates as well, and this time not recorded. He was also never paid for the unrecorded hours at an FLSA 'Regular Rate' at all during this period.

23. ***Defendant Admitted to Daily Time Clock Errors.***  The Defendant's time clocks did not function properly, and the Clevelander routinely admitted to its employees in writing that there were time clock errors every single day.  The Clevelander routinely admitted to its employees that 'commissions' could, thus, not be properly calculated.

24. ***Failure to Record Cash Tips in Violation of the FLSA.***  Defendant failed to record cash tips in furtherance of its scheme to underpay employees.  By intentionally understating tips, the Clevelander improperly and artificially reduced the 'Regular Rate'.  FLSA Regular Rate is calculated by including all compensation, including tips.  Failure to record cash tips was a direct

violation of the FLSA recordkeeping requirements, and the Defendant failed to record these tips in order to artificially reduce the 'Regular Rate', which improperly reduced the 'Overtime Rate' (Overtime Rate equals 1.5 x 'Regular Rate).  These unrecorded cash tips must be added back in to determine the full extent of Overtime owed.

25.  *The Failure to Pay Pursuant to Bona Fide Exemption Rate (if an Articulable Rate Existed) Extinguishes the Exemption:* ROBERT SCHULTZE was not an exempt employee under the FLSA; even if he was supposed to be paid according to an articulable 'bona fide commission rate' in furtherance of the 7(i) exemption, ROBERT SCHULTZE was not actually paid pursuant to a 'bona fide commission rate.'  That is, if a bona fide commission rate existed, he was not paid the amounts due under the bona fide commission rate.  In other words, even if a 'bona fide exemption rate' existed in theory: *because he was not actually paid pursuant to the rate*, failure to pay pursuant to the rate renders both the rate and the exemption nothing more than an irrelevant fiction and 'extinguishes' the exemption.

26.  *Even if the 7(i) Exemption Applied to Some or All Hours Worked, Employee Must be Compensated for Moneys Owed to Avail Itself of the Exemption:* even if ROBERT SCHULTZE, was an 'exempt' employee for some or all of the hours worked (*e.g.* for 2 of the weeks), he is owed the amounts due under the 'commission rate' that have not been paid; he has not been properly paid under same and is owed such amounts.  Such moneys are recoverable under this action and must be paid pursuant to this claim.  This claim seeks all such moneys for amounts owed under any period in which SCHULTZE is found to be a 7(i) exempt employee (and where overtime is not recoverable).

27.  *Willfulness—Defendant Prohibited Employees from Exchanging Wage Literature and Dissuaded Employees from Enforcing their Rights:* Further, the Defendant set

procedures to prohibit its employees from discovering the Defendant's wage violations and from discussing the wage violations with fellow employees.  In fact, the Defendant prohibited the employees from exchanging wage literature, and enforced a blanket prohibition against employee's soliciting or exchanging pamphlets, in violation of the National Labor Relations Act.  The Defendant also included restrictions against discussing and reporting violations in violation of the National Labor Relations Act.  The Defendant enforced a restriction against employee's sharing their wage information with one another in violation of the National Labor Relations Act.  The Defendant has repeatedly and willfully dissuaded employees from enforcing their rights and has intentionally and willfully taken actions to conceal these violations in order to delay employee's enforcement of their rights.  Where facts and evidence discovered support expanding recovery to time periods which would otherwise be time barred, Plaintiff seeks recovery as far back as those facts reveal.  These actions further evidence the willful nature of Defendant's systematic violations.

28. *Calculation of 'Regular Rate':* Between the dates of approximately July 18, 2014 through approximately September 16, 2014, ROBERT SCHULTZE's 'Regular Rate' was different on each week because ROBERT SCHULTZE's compensation rate varied and the calculation of 'Regular Rate' varies based on the actual amount of compensation each week.  The 'Overtime Rate' is 1.5 x this 'Regular Rate'.  His average 'Regular Rate' was approximately $20 per hour.  This calculation is subject to update, as more precise calculations become possible (including as approximations as to the amounts of cash tips become apparent through discovery).

29. *Artificially Low 'Regular Rate':* Plaintiff was told that he must either accept the payment or he would receive 1.5 x. an Artificially Low 'Regular Rate', in violation of the FLSA, as discussed in the Department of Labor regulations for Devices to Evade the Requirements of the

Act.  This further evidences the willfulness of Defendant's violation.

30. ***Liquidated Damages, Attorneys' Fees, and Costs:*** The FLSA provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages plus an additional equal amount in liquidated damages (doubling), plus costs, interest and reasonable attorneys' fees.  As a result of the Clevelander's violations, Plaintiff is entitled to unpaid wages plus an additional equal amount in liquidated damages along with costs, interest and reasonable attorneys' fees.  Plaintiff seeks reasonable attorneys' fees and costs under the FLSA and to the fullest extent permissible under all applicable law, including under 29 U.S.C. § 216(b) and all other applicable law. Plaintiff claims the highest amount owed under this cause of action.  Where Plaintiff is owed 1.5 x 'Regular Rate'; Minimum Wage; or some other amount for any particular time worked, Plaintiff seeks the highest amount as allowed by law.

31. ***Improper Recordkeeping:*** Plaintiff's burden to prove particular aspects of his claim is reduced—*as provided by applicable law*—by Defendant's failure to keep proper records and failure to comply with FLSA recordkeeping requirements; the Clevelander had time clock errors every day; failed to keep proper FLSA records for 'retroactive' payments; failed to record cash tips; failed to keep a proper record of purported commissions; lost and/or destroyed records; instructed employees to work while clocked out; failed to keep notations as to which employees were exempt; failed to keep records as to alleged commission rates; failed to keep records as to 'representative periods' for the purported 7(i) exemption; failed to record all days and hours worked; and otherwise failed to keep proper records.

**WHEREFORE**, the Plaintiff demands Trial by Jury; judgment against the Defendant for damages suffered as a result of the alleged lost earnings; liquidated damages; other damages together with all taxable court costs, attorneys' fees, as well as prejudgment interest (prejudgment

interest if liquidated damages are not available); and such other relief as the Court may deem just and proper.

Dated this 18th day of July, 2017

                                           Respectfully submitted,

                                           LAW OFFICES OF PAUL A. SACK, P.A.
                                           1130 Washington Avenue, Suite 3
                                           Miami Beach, Florida 33139
                                           Telephone: 305-397-8077
                                           Facsimile:   305-763-8057

By:   <u>/s/ *Paul A. Sack*</u>
       PAUL A. SACK, ESQ.
       FBN: 363103
       Primary: ps1619@bellsouth.net
       Secondary: sackpaul@yahoo.com
       R. BRANDON DEEGAN, ESQ.
       FBN: 117368
       Primary: rbdeegan@gmail.com
       Secondary: deegan.attorney@gmail.com