UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:17-cv-22684-FAM

ROBERT SCHULTZE,

    Plaintiff,

v.

2K CLEVELANDER, LLC,

    Defendant.
_____/

**DEFENDANT, 2K CLEVELANDER, LLC'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, 2K CLEVELANDER, LLC, a Florida corporation, ("The Clevelander" or "Defendant") hereby moves for Final Summary Judgment pursuant to Federal Rule of Civil Procedure 26, on all claims alleged in the Complaint [D.E. 1] brought by Plaintiff, ROBERT SCHULTZE ("Schultze" or "Plaintiff"). In support thereof, The Clevelander states as follows:

### I.    INTRODUCTION

    This is a simple minimum wage and overtime matter involving a barback who earned on average of $16.64 for each hour worked (not just those over 40 hours) during the relevant time period. More specifically, Plaintiff alleges he was not properly paid for his services as a barback at The Clevelander during an eight (8) week time period from July 18, 2014 through September 16, 2014. It is Plaintiff's position that he did not receive minimum wage and overtime under the Florida the Fair Labor Standards Act ("FLSA") for hours worked in excess of 40 hours per week. Plaintiff alleges that his regular rate of pay was approximately $20.00 an hour, with his FLSA

"overtime rate" to be approximately $30.00 an hour, which would equate to a barback annual salary of $57,200 if the Plaintiff worked 50 hours every week.[1] The Plaintiff's claimed annual salary for a barback working 50 hours per week would exceed the $41,913 median household income in Miami-Dade during the same time period by $15,287 or approximately 36%.[2] Additionally, the Plaintiff alleges he worked an additional .5 to 2.5 hours per work day "off the clock." This is the classic example of the Plaintiff asking the Defendant to disprove a negative.

Critically, Plaintiff is not entitled to any overtime compensation, as he was an exempt employee pursuant to the Retail Sales Exemption of the FLSA. As discussed in detail below, Plaintiff was paid strictly in commissions, and he earned greater than 1.5 times the minimum wage for all weeks where he worked 40 hours or more. Accordingly, Plaintiff's claim must fail in its entirety.

Plaintiff's average hourly rate (not just those over 40 hours) during the Relevant Period was $16.64, which is clearly above the Florida minimum wage in 2014 of $7.93 per hour. (SOF ¶ 15, and Exhibit A attached thereto at ¶ 11). The record evidence proves that The Clevelander was exempt from paying overtime to the Plaintiff, and The Clevelander's commission compensation structure financially benefited the Plaintiff vis a vi what the Plaintiff would have earned over an overtime structure. A breakdown of the Plaintiff's pay under the commission structure in comparison to what the Plaintiff would have received under an overtime structure is found as Exhibit "C" to the Affidavit of Kittine Moreno, Defendant's Corporate Representative. This chart exemplifies the following

---

[1] $20 x 40 hours x 52 weeks = $41,600. $30 x 10 hours x 52 weeks= $15,600.
[2] https://www.miamidade.gov/business/library/reports/2013-income-poverty.pdf

| Pay Date: | Pay Under 7i: | | | | Pay Under Florida Minimun Wage/ Time and a Half: | | | | Florida Minimun Wage/ | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Regular Hours Worked: | Overtime Hours Worked: | Gross Pay | Effective Hourly Rate: | Regular Totals Paid at Florida Minimum Wage ($7.93): | Overtime Totals Paid at Time and a Half of Florida Minimum Wage ($11.89): | Gross Pay: | Effective Hourly Rate: | Gross Pay: | Effective Hourly Rate: |
| 7/28/2014 | 0.5 | | $3.97 | $7.94 | $ 3.97 | $ - | $ 3.97 | $ 7.93 | $0.01 | $0.01 |
| 8/11/2014 | 80 | 10.1 | $1,427.79 | $15.85 | $ 634.40 | $ 120.09 | $ 754.49 | $ 8.37 | $673.30 | $7.47 |
| 8/25/2014 | 68 | 0 | $957.00 | $14.07 | $ 539.24 | $ - | $ 539.24 | $ 7.93 | $417.76 | $6.14 |
| 9/8/2014 | 80 | 11.72 | $1,703.00 | $18.57 | $ 634.40 | $ 139.35 | $ 773.75 | $ 8.44 | $929.25 | $10.13 |
| 9/22/2014 | 59.23 | 0 | $1,059.57 | $17.89 | $ 469.69 | $ - | $ 469.69 | $ 7.93 | $589.88 | $9.96 |
| Totals: | 287.73 | 21.82 | $5,151.33 | $16.64 | $ 2,281.70 | $ 259.44 | $ 2,541.14 | $ 8.21 | $2,610.19 | $8.43 |
| Florida Minimum Wage for 2014: | 7.93 | | | | | | | | | |

In fact, the Plaintiff's above pay records show that the Plaintiff made $2,610.19 *more* than he would have earned if paid under an overtime structure during the eight week time period ($5,151.33 versus $2,541.14). In every week worked besides one week that the Plaintiff worked .5 hours, the Plaintiff's average hourly wage for *all hours worked* exceeded the Florida and federal *overtime rates* during the same time period, and usually by a wide margin. Thus, for hours 1-40 worked during the relevant time period, the Plaintiff was earning considerably more than he would receive for hours worked in excess of 40 hours if The Clevelander paid overtime and did not utilize the Retail Sales Exemption under the FLSA. In a grand sense of irony, the Plaintiff is suing The Clevelander for failing to pay him under a pay structure that would have been greatly financially disadvantageous to the Plaintiff. In this respect, the Plaintiff argues for a pay system that is detrimental to the Plaintiff and The Clevelander's workforce. This lawsuit underscores the runaway FLSA based litigation and creates a scenario where The Clevelander is being sued for implementing a pay system that it was legally allowed to implement, and a system that financially benefitted its workforce, including the Plaintiff.

The Court should grant Final Summary Judgment in favor of The Clevelander.

### A. Factual Background.

The Clevelander hereby incorporates into this Motion, by reference, its Statement of Material Facts ("SOF"), filed contemporaneously herewith. All citations to the evidentiary record will be to the Statement of Material Facts unless otherwise indicated.

## I.   ARGUMENT

### A. Summary Judgment Standard.

Summary Judgment under Rule 56 is proper "if the pleadings, depositions, answers to Interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of Rule 56(c) "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party shall bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In such a situation, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* An issue is 'genuine' only if there is sufficient evidence with which a reasonably jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For purposes of this motion only, the Court should construe the facts and all reasonable inferences in the light most favorable to the Plaintiff. *Pipkins v. City of Temple Terrace*, 267 F. 3d 1197, 1201 (11th Cir. 2001).

Once the moving party has met its burden, under 56(e), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Fed R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-24. It is not enough that the

nonmoving party comes forward with the "mere scintilla of a scintilla of evidence…" *Anderson*, 477 U.S. at 252, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Summary judgment cannot be avoided…based on hunches unsupported with significant probative evidence." *Raney v. Vinson Guard Serv.*, 120 F. 3d 1192, 1198 (11th Cir. 1997). According to the plain language of Rule 56(e), the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

### B. Summary Judgment Should be Granted as to Count I Because Plaintiff was an Exempt Employee under § 207(i).

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. *Forster v. Smartstream Inc*., 206 U.S. Dist. LEXIS 1148; No 3-13-cv-866-J-PDB (M.D Fla. 2016) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). Unless an exemption exists, 29 U.S.C. § 207 requires an employer to pay an employee for hours worked over 40 in a week at a rate not less than "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); 29 C.F.R § 778.101.

Section 207(i) exempts commissioned employees of retail or service establishments from the FLSA overtime-wage requirement. It provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 207 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall

be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

The commissioned-work exemption has three elements: (1) the employer must be a retail or service establishment; (2) the employee's regular rate of pay must exceed one and one-half times the federal minimum wage; and (3) the employee must earn more than half his salary in commissions from goods and services during a representative period not less than one month. *Henriquez v. Total Bike, LLC,* No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXIS 179592, at *7 (S.D. Fla. 2013)(citing 29 U.S.C. § 207(i)); *see also, Klinedinst v. Swift Invs., Inc.,* 260 F. 3d 1251, 1254 n.2 (11th Cir. 2001)(quoting 29 U.S.C. § 207(i)). As discussed in detail below, Defendant has met all three requirements, and Plaintiff is exempt from overtime under the retail exemption under the FLSA.

### 1. The Clevelander is a Retail or Service Establishment.

A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 CFR 779.320.

The FLSA regulations define a "retail or services establishment" as follows:

> (a) Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. (See, however, the discussion of section 13(a)(4) in §§779.346 to 779.350.) Such an establishment sells to the general public its food and drink.

29 C.F.R § 779.318(a).

The Code of Federal Regulations provides a partial list of retail and service establishments, and included on the list are both hotels and restaurants. 29 C.F.R. 779.317. The Clevelander falls well within the definition, as it is a hotel in Miami Beach that has restaurants contained therein. (SOF ¶ 1).  During the Relevant Period, Plaintiff worked at The Clevelander as a barback where he stocked the bars. (SOF ¶ 2-3).

### 2. Plaintiff's Regular Rate of Pay Exceeds One and One-Half Times the Minimum Wage in all Weeks in Which Overtime was Worked.

Defendant has met the second element of the exemption, as Plaintiff's regular rate of pay exceeded 1.5 times the minimum wage rate for all hours worked in every week in which over 40 hours were worked.  For the second element, the "regular rate of pay" is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed" and "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." 29 C.F.R. § 779.419(b) (quoting *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419, 424 (1945). "Regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). "The regular rate is determined by dividing the … total compensation during the workweek by the number of hours worked." *Klinedist*, 260 F.3 at 1256.

After obtaining the regular rate, a court must compare it to the minimum rate of pay of the employee to determine if the rate is one and one-half times the minimum wage. 29 C.F.R. § 779.419(b). The Florida minimum wage applicable in 2014 was $7.93. 29 U.S.C. § 206(a)(1); (SOF ¶13). One and one-half times the 2014 minimum wage is $11.89. (*Id*.) An employee's regular rate of pay must exceed the federal **minimum wage overtime rate** [3] for the employer to satisfy

---

[3] Plaintiff might argue that the regular rate cannot be determined, and therefore the overtime rate cannot be determined, as there were unreported cash tips that may have been received by the Plaintiff. However, §207(i) only requires that the employee be paid 1.5 times the minimum wage overtime rate, or 1.5 x $7.93 = $11.895. Whether or not the Plaintiff

the second element of the commissioned-work exemption. *Henriquez v. Total Bike, LLC,* No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXID 179592, at *7 (S.D. Fla. Dec 23, 2013).

"An employee claiming a violation of the FLSA overtime requirement bears the burden of proving by a preponderance of the evidence that… the employee worked over 40 hours within a workweek without overtime compensation; and a definite amount of compensation is due." *Hernandez v. Quality Constr. Performance, Inc.*, 2014 U.S. Dist. LEXIS 189851 (S.D. Fla. 2014) (internal citations omitted). An employee "has the burden of proving that he performed work for which he was not properly compensated." *Id.*

It is undisputed that the Relevant Period is July 18, 2014 through September 16, 2014, and that during this time, Plaintiff worked 33 days and earned $5,151.33 for 309.55 hours of recorded work. Plaintiff claims in his Amended Statement of Claim that his Regular Rate is $19.99. This is clearly well in excess of one and a half times the Florida minimum wage in 2014, which was $11.89, and for 7(i) purposes the evaluation would be based on the $7.25 per hour federal minimum wage in 2014, which would lead to a $10.87 overtime rate.

Even if analyzed on a weekly basis, the undisputed facts show that Plaintiff was paid in excess of $11.89 per hour for all weeks in which more than 40 hours per week were worked, and in excess of $7.93 for all weeks in which less than 40 hours of week were worked. (SOF ¶¶ 14-15). These amounts clearly exceed the federal minimum wage rates at the time. Specifically, Plaintiff was paid as follows:

---

received additional monies over and above what is reflected on his payroll records is of no consequence, as it would only serve to *increase* his regular rate, making it even further above the $11.895 rate than it already is. Moreover, it would have been the Plaintiff's obligation to report those cash tips to the employer so that same could be reflected on his payroll records. To the extent Plaintiff did not do so, he cannot now hold his own failure to report the tips against his employer. And, once again, if they existed, it would only serve to *increase* his regular rate, making Defendant's position on this issue even stronger.

| Pay Period | Hourly Rate based on Payroll Records and Time Cards |
|---|---|
| 7/23/14-7/29/14 | $16.31/hr |
| 7/30/14-8/5/14 | $14.26/hr |
| 8/6/14-8/12/14 | $14.51/hr |
| 8/13/14-8/19/14 | $13.49/hr |
| 8/20/14-8/26/14 | $15.93/hr |
| 8/27/14-9/2/14 | $20.66/hr |
| 9/3/14-9/9/14 | $21.22/hr |
| 9/10/14-9/16/14 | $14.55/hr |

(SOF ¶ 14). This clearly shows that Plaintiff was paid in accordance with the Retail exemption to the FLSA. 29 U.S.C. § 207(i).

Plaintiff may attempt to argue that Defendant's records are incomplete or inadequate to prove that Plaintiff was properly paid. However, the Southern District has held that, where "it is not possible or practicable to allocate Plaintiff's commissions in each workweek" then "averaging the total base pay and commissions across Plaintiff's employment hours is a 'reasonable and equitable method' by which to resolve Plaintiff's hourly regular rate of pay." *Freixa v. Prestige Cruise Servs., LLC*, Case No 15-22732-Civ-COOKE/TORRES (S.D. Fla. 2016). In the event Plaintiff asserts that Defendant's records are incomplete, or Plaintiff cannot otherwise calculate his hourly rates on a weekly basis pursuant to the requirements of 29 U.S.C. § 207(i), *Freixa* permits Defendant to calculate Plaintiff's hourly rate on a biweekly or annual basis. *Id*. In doing so, Defendant still prevails, as Plaintiff earned $16.64 per hour based on his time cards when taking

an average over the entire period of his employment. (SOF ¶ 15). This amount is clearly above 1.5 times the 2014 minimum wage or $11.89/hour.

Furthermore, the Plaintiff will predictably cite to a Court Order entered in *Flores v. 2K Clevelander, LLC*, No. 1:16-cv-24083-UU ("*Flores* Case"), wherein the Court denied The Clevelander's Motion for Summary Judgment, in part, as it relates to the 7i exemption. The Plaintiff has, throughout this litigation, relied on the Order in the *Flores* Case for its proposition that The Clevelander cannot establish that it utilized a commission structure in paying its exempt employees. However, in the *Flores* Case, there were issues with certain records (commission reports) being unavailable due to internal password protection during a time period that the Plaintiff is not suing under; although The Clevelander attempted to bypass the password protections through a third party that specializes in same, it was unable to do so and resultantly could not access those spreadsheets. Additionally, there were various redactions made to those reports that were available and produced to the Plaintiff Flores. While the Plaintiff may still contend that The Clevelander does not have the proper documentation in this case to prove that it utilized a commission system, this argument simply has no merit as The Clevelander has in fact produced commission report documents for the Relevant Time Period, completely unredacted. The record access issue that led to the *Flores* decision does not apply to this case. Moreover, the Defendant's Corporate Representative has in fact articulated the method of paying the commission system to the exempt barback employees as the Plaintiff in The Clevelander's Answers to Interrogatories. While the Plaintiff will try to maintain that the issues that precluded summary judgment in the *Flores* Case are present in this case, this simply is not true. The Plaintiff's discussion of the *Flores* Case is nothing more than an attempt to distract this Court from the

undisputed facts that exist in this case. *Flores* was a different case involving different time periods, and a unique record issue that does not apply here.

### 3. Plaintiff Earned More than Half his Salary in Commissions from Goods or Services.

Here, Plaintiff earned all of his compensation through commissions. (SOF ¶ 16) Thus, the test should end here. This district has already held that a service charge on a customer's bill is a commission. *Nascembeni v. Quayside Place Partners, LLP,* 2010 U.S. Dist. LEXIS 58707 (S.D. Fla. 2010). The Court in *Nascembeni* granted summary judgment to the employer on the Plaintiff's minimum wage and overtime claims, and found that the Plaintiff was an exempt 7(i) employee, holding that a "service charge" added by a hotel to every bill, and then distributed (in whole or in part) to its banquet staff, is properly classified as a "commission." *Id.; see also Mechmet v. Four Seasons Hotels, Ltd*., 825 F.2d 1173, 1174-77 (7th Cir. 1987).

In this case, similarly to *Nascembeni,* there is no dispute that the Defendant added a service charge to every bill, and then distributed a portion of that service charge to its employees, including the Plaintiff. (*See* SOF ¶ 4-7). There is also no dispute that the service charge was nonnegotiable, in other words, the Defendant's customers had no discretion as to whether to pay the service charge or not. (*See* SOF ¶ 5.). As such, the "service charge" is properly classified as a "commission."

In *Parker v. NutriSystem, Inc.*, 620 F.3d 274 (3rd Cir. 2010) the Court said that, in order to be a commission, Section 7(i) requires that the fee paid to the employee must be based on a bona fide commission rate." The *Parker* court found that since the language "bona fide commission rate" language was imprecise and capable of ambiguity, it held that the plain language of § 7(i) "does not provide sufficient guidance to govern the application of the statute…" *Id.* The court reiterated that Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the

*minimum standard of living* necessary for health, efficiency and general well-being of workers.'" *Parker v. NutriSystem, Inc.*, 620 F.3d at 274. (emphasis added). The Court in *Mechmet* held that because the record suggested that the hourly pay of the plaintiffs, including "commissions," typically amounted to three to four (and more) times the minimum wage, the plaintiffs were not the marginal, workers for whom the overtime provisions were designed; rather, they are the employees of a big-ticket department, whom section 207(i) was intended to exempt. *Mechmet v. Four Seasons Hotels, Ltd*., 825 F.2d 1173, 1177 (7th Cir. 1987). Commission income is a permissible characterization of the service charges that the waiters received, and one that advances the statutory purposes. *Id.*

In considering whether the system of compensation was a commission system within the meaning of the statute, the *Parker* court considered *Yi v. Sterling Collision Centers*, 480 F. 3d 505 (7th Cir. 2007). In *Yi* v. *Sterling*, the Plaintiff auto mechanics were compensated through a formula involving a price for the repair of the automobile to the customer, including material costs, and compensation based on the ratio of hours each mechanic worked to complete the project, and skill or quality of individual team member.  The Seventh Circuit noted that "a commission can be based on the full price of the good or service sold or on only part of the price, for example the price of the labor that goes into the good or service." *Yi*, 480 F. 3d at 505. *See* Dep't of Labor Op. Ltr. 2005 WL 3308624 (Nov 14, 2005) ("The whole premise behind earning a commission is that the amount of sales would increase the rate of pay.").

In *Yi* v. *Sterling*, the court stated:

[t]he essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold. Although his income is likely to be influenced by the number of hours a week that he works, the relation is unlikely to be a regular one. In one week business may be slow; he may make no sales and thus have no income for that week. The next week

business may pick up and by working overtime that week he may be able to make up the income he lost because of slack business the previous week. Over a year his hours of work may be similar to those of regular hourly employees. So if he had to be paid overtime, his annual income would be higher than theirs even though he hadn't worked more hours over the course of the year than they had. We take this to be the rationale for the commission exemption from the FLSA's overtime provision.

480 F. 3d at 505.

In the instant case, from July 18, 2014 through September 16, 2014, The Clevelander charged its restaurant and bar patrons a service charge on all food and beverage orders. (SOF ¶ 4). The Clevelander paid its servers, bartenders and barbacks strictly commissions, which were based upon a percentage of gross sales or a percentage of service commissions generated by the bar, whichever was greater. (SOF ¶ 7). The barback commissions were calculated using the hours worked, specific duties involved, and specific bars the employee was assigned to for a particular shift. (SOF ¶ 8). Since the commissions were based upon the service charge, which was a percentage of the total sales for each customer, Plaintiff and the servers and bartenders serving each patron had an incentive to increase the sales, which would thereby increase their overall commission received. (SOF ¶ 9). Based on the foregoing, and pursuant to *Nascembeni, Mechmet, and Parker*, the commission paid to Plaintiff constituted a 'bona fide' commission. As such, because all of Plaintiff's wages constituted these commissions, part three of this test is satisfied and the 7(i) exemption has been met.

## II.     CONCLUSION

The record evidence establishes that The Clevelander qualifies for the Retail Sales Exemption of the FLSA. Furthermore, the Plaintiff's undisputed pay records from the relevant time period evidences that the Plaintiff was paid in excess of the overtime rate at all times, usually by a wide margin. In fact, Exhibit "C" to the affidavit of Defendant's Corporate Representative

shows that the Plaintiff earned on average an effective hourly rate of $16.64 during the relevant eight-week time period, and $2,610.19 in wages exceeding what the Plaintiff would have earned if the Plaintiff was paid overtime.

The Plaintiff's effort to overcomplicate the matter and create the illusion of material issues of fact when none exist should be rejected. This is a straight forward wage and hour lawsuit, not *Marbury v. Madison*. The Plaintiff's pay records during the relevant time period, in of themselves, shut down the Plaintiff's claim for illegal wage treatment. No amount of over-complication of facts and analysis, citing Orders from different cases dealing with wholly separate pay periods, or claiming a ridiculous $20 or $30 per hour wage that should have been earned by Plaintiff under normal overtime, can defeat the sound arguments and record evidence cited herein.

For the foregoing reasons, The Clevelander respectfully requests that the Court grant its Motion for Summary Judgment and enter in its favor on all of Plaintiff's claims.

**WHEREFORE,** the Defendant, 2K CLEVELANDER, LLC, respectfully requests that this Honorable Court enter an Order granting Defendant's Motion for Summary Judgment, and take such further action as it deems just and proper.

*[Certificate of Service on Following Page]*

Case No.: 1:17-cv-22684-FAM

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of January, 2018, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

>                    COLE, SCOTT & KISSANE, P.A.
>                    *Counsel for Defendant 2K CLEVELANDER, LLC*
>                    Cole, Scott & Kissane Building
>                    9150 South Dadeland Boulevard, Suite 1400
>                    P.O. Box 569015
>                    Miami, Florida 33256
>                    Telephone (786) 268-6415
>                    Facsimile (305) 373-2294
>                    Primary e-mail: cody.german@csklegal.com
>                    Secondary e-mail: rebecca.anguiano@csklegal.com
>                    Alternate e-mail:  tania.gomez@csklegal.com
>
>
>    By:   s/ Cody German
>                    JOHN C. GERMAN
>                    Florida Bar No.:  58654
>                    REBECCA R. ANGUIANO
>                    Florida Bar No.:  99690

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX