UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-22684-MORENO/LOUIS

ROBERT SCHULTZE and MARIO ALBAN,

      Plaintiffs,

vs.

2K CLEVELANDER, LLC,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

    This matter is before the Court on Plaintiff Mario Alban's Motion to Strike Defendant's Pleadings and for Other Relief for Willful Destruction of Evidence, originally filed in the consolidated case *Alban v. 2K Clevelander, LLC*, No. 17-cv-23923-MORENO, on August 6, 2018. This motion was referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge, for a Report and Recommendation. An evidentiary hearing was held before the undersigned on Plaintiff's motion on August 21, 2018, prior to the consolidation of cases. The undersigned has carefully reviewed the motion (*Alban*, ECF No. 63), Defendant's response (*Alban*, ECF No. 65), Plaintiff's reply (*Alban*, ECF No. 65), the pertinent portions of the record, and is otherwise fully advised in the premises.

## I.    BACKGROUND FACTS

    Plaintiffs Mario Alban and Robert Schultze are former employees of Defendant, 2K Clevelander, LLC, and bring these claims under the Fair Labor Standards Act ("FLSA"). Plaintiffs allege that they were not compensated for overtime worked throughout the course of

1

their employment. Plaintiff Alban additionally brings a claim under Florida common law for unpaid wages based on Defendant's alleged inaccurate calculation of hours worked and commissions earned. Defendant avers that both Plaintiffs were exempt from overtime pay under 29 U.S.C. § 207(i) (the "7(i) exemption")[1] as commissioned employees, and denies that it failed to pay Plaintiff Alban for hours he worked as alleged.

Plaintiff Alban's compensation was derived entirely from commissions, which were calculated based on a formula that took into account total sales and "service charges" collected for a particular period, the number of hours worked by all participating commissioned employees, and divided the amounts collected proportionally among the servers according to their respective number of hours worked.[2] Defendant used spreadsheets to keep track of the number of hours each employee worked and to calculate their wages (known as "commission spreadsheets"). The commission spreadsheets populated manually from information contained in "end of shift reports" (also known as "point of sale (POS) summaries") generated by each service employee (bartender or server, but not bar backs) at the end of his or her shift. The employee submitted the report in a "cash out envelope." The envelope contained various handwritten notations, which include the employee's name and signature, the date and time worked, and various categories of compensation for that particular work shift, including sales cash/checks dropped, credit card payments, and comps (items the customer was not ultimately charged for). Examples of these envelopes and summaries were pasted inline in

---

[1] The FLSA provides an exemption to the overtime requirement under Section 207(i) for commissioned employees of retail or service establishments if the employee's regular rate of pay is more than one and one-half times the statutory minimum hourly rate and if more than half of his compensation is derived from commissions on goods or services.

[2] Relevant facts are additionally drawn from the undersigned's Report and Recommendation on Summary Judgment (ECF No. 84), which was adopted by the Court on September 26, 2018 (ECF No. 101).

Plaintiff's reply, *see* ECF No. 66 at 2, as well as submitted into evidence at the evidentiary hearing. *See* ECF No. 69-1.

The envelope figures are calculated by the point of sale summaries, which are generated by Defendant's computer and tally opened/closed checks, total sales, discounts, taxes, and tips and gratuities, broken down by credit card and cash payment. The summaries contained in the cash out envelopes are the only documents that record the actual amount of sales and gratuities, differentiated by cash and credit card, the importance of which is explained below. After transferring the data from the POS summaries to the commission spreadsheet, Defendant stored the cash out envelopes in hard copy in banker boxes. These banker boxes are the subject of Plaintiff's motion.[3]

Both Parties moved for summary judgment on Defendant's entitlement to the 7(i) exemption, which Defendant raised as an affirmative defense to Plaintiff's overtime claims (Count I). Defendant advanced evidence that the commission paid to Plaintiff was based on a bona fide rate, calculable from a mandatory service charged applied to every bill beginning in 2014 and continuing through the end of Plaintiff's employment. Arguing that neither the customer nor the employer had the discretion to waive or modify the mandatory service charge, Defendant claimed that the evidence conclusively proved its entitlement to the affirmative defense that Plaintiff was exempt under 7(i).

Plaintiff advanced evidence that the service charge was a discretionary gratuity and adduced affidavits attesting to circumstances in which the service charge was not applied to or removed from a bill. Plaintiff also adduced evidence also that the amounts collected for the service charge were not maintained separately from the amounts a server earned in tips: tips

---

[3] Plaintiff Schultze raised comparable accusations of spoliation in his Omnibus Motion *in limine*, in which he seeks an order precluding Defendant from presenting any evidence in support of its affirmative defense as a sanction for the destruction of evidence.

belong exclusively to the server to whom the tip was paid, as compared to the service charge applied uniformly to every bill, which was apportioned among all commissioned employees, as explained above. Notwithstanding, tips paid by the customer by credit card charge were pooled with the service charge and included in the collective commission calculation. Plaintiff argued that in so doing, Defendant varied from the bona fide commission rate it purported to employ in calculating Plaintiff's wages and the inability to prove a bona fide commission rate defeats Defendant's entitlement to the 7(i) exemption.

The Court has now denied the Parties' summary judgment motions. The key dispute that will have to be determined at trial is whether Defendant's commission system applied a "bona fide commission rate" as required in order for Defendant to prevail on its affirmative defense on the 7(i) exemption. Evidence that the service charge was discretionary, or that individual server's tips were commingled in the pool from which the commission was calculated among all servers, undermines Defendant's ability to prove that the commission was based on a bona fide rate and, ultimately, to prove its entitlement to the affirmative defense on the exemption.

Plaintiff Alban also moved for partial summary judgment on Count II, his unpaid wages claim, and adduced evidence that shows a discrepancy between his time entries captured by Defendant's time clock reflected on ADP time records, and the time Defendant manually entered into its commission spreadsheets (from which his wages were ultimately calculated). Defendant contests the significance of that discrepancy, explaining that the ADP time records were but one data source for Plaintiff's wage calculation: the POS summaries, stored in the cash out envelopes, was another. At oral argument, both Parties argued the cash out envelopes would

definitely prove or disprove Plaintiff's claims. Unfortunately, Defendant destroyed the documents shortly after this suit was filed.

## II.    DISCUSSION

### a.    Summary of the Parties' Positions.

In the present motion, Plaintiff Alban moves to strike Defendant's pleadings and to sanction Defendant for destroying relevant documents, including cash out envelopes and time clock correction sheets. Plaintiff avers the missing evidence would prove Defendant's failure to pay him for the hours he worked, and would also demonstrate the inconsistent (not mandatory) application of the service charge, defeating Defendant's entitlement to the affirmative defense on the 7(i) exemption. Plaintiff supported his motion with a shredding ledger and invoices, produced by Defendant, showing payment to a document destruction company ("Shred It") for multiple jobs completed in 2015, 2016, and 2017.  ECF No. 63-1. The ledger reflects that the most significant invoice was for services rendered on August 25, 2016, in the amount of $3,327.13. *Id.* Plaintiff also attached to his motion a photograph purportedly showing the act, which shows a man loading up a truck filled with numerous boxes. *Id.* Plaintiff avers that these boxes contained cash out envelopes, end of shift reports / POS summaries, as well as time clock error correction sheets, *see* ECF No. 63-4, which as the name suggests, were used by employees to correct and errors with their time clock entries. Plaintiff avers that the boxes may contain other pieces of evidence which were destroyed, but admits he cannot identify the nature of that evidence.

Defendant does not deny that the shredding occurred. Defendant opposes the motion on the grounds that the documents are "meaningless." Defendant denies that it had a duty to preserve the documents or that Plaintiff is prejudiced by the inability to produce the documents.

Defendant's opposition represented that the documents shredded were copies of "receipts," which this Court had already ruled were beyond the scope of discovery and could not be compelled; and that the information contained in shredded documents were electronically stored and had already been produced to Plaintiff.

Plaintiff's motion seeks various forms of relief for Defendant's acts, including striking Defendant's pleadings, striking Defendant's 207(i) affirmative defense, imposition of various presumptions in Plaintiff's favor relating to the Parties' claims and defenses, and permitting a presentation of the spoliation argument to the jury.

### b.    Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A district court has "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir.2005). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.* Sanctions for spoliation of evidence include dismissal of the case or a default judgment; exclusion of evidence; or a jury instruction (adverse inference) on spoliation, which raises a presumption against the spoliator. *See United States Equal Employment Opportunity Comm'n v. GMRI, Inc.*, No. 15-20561-CIV, 2017 WL 5068372, at *22 (S.D. Fla. Nov. 1, 2017); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). The adverse inference

makes a finding or imposes a rebuttable presumption that the missing evidence would have been unfavorable to the party engaging in the misconduct.

The party moving for spoliation sanctions must prove first that that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense. *See In re Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 515 (S.D. Fla. 2015). It is not enough to show that the spoliation occurred; sanctions for spoliation are not available absent a finding of bad faith. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power requires a finding of bad faith."); *see also Cox v. Target Corp.*, 2009 WL 3497730, *2 (11th Cir. Oct. 30, 2009). Plaintiff thus bears the burden to show that evidence once existed "that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case;" that the Defendant engaged in an affirmative act causing the evidence to be lost; that it did so while it knew or should have known of its duty to preserve the evidence; and that "the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009).

c.    **Findings of Spoliation.**

Plaintiff initiated this suit on October 25, 2017. On November 13, 2017, Plaintiff served requests for the production of documents.[4] Among the requests, Plaintiff demanded copies of his cash out envelopes.[5] Defendant responded on December 12, 2017, and raised no objection to the scope, relevance, or burden to comply with this request, instead directing Plaintiff to the

---

[4] ECF No. 69-2 (hearing exhibit).
[5] "All envelopes—and documents in the envelopes—with any amounts or words written on them pertaining to Plaintiff's pay and pay of all other employees whose 'commission' pay or calculation affected Plaintiff's pay in any way, including all 'cash out envelopes.'" (ECF No. 63-3, Plaintiff's Request for Production No. 18).

commission reports produced. Plaintiff's request put Defendant squarely on notice of his demand for the cash out envelopes.

In the same set of requests served in November 2017, Plaintiff requested documents relating to destruction of documents by Defendant.[6] Defendant produced no document responsive to the request and denied destroying documents: "the Defendant objects to any inference that Defendant 'destroyed' any documents."[7]

As it turns out, in the same week it served those responses, Defendant commissioned "Shred It" to destroy documents. The invoices advanced by Plaintiff memorialize services rendered on December 11 and 18, 2017, resulting in charges totaling $826.95. In effort to show the relative magnitude of the documents shredded on those dates, Plaintiff offers the ledger of prior shred jobs performed by "Shred It" (ECF No. 63-1). Though the ledger indicates that it spans back to January 1, 2014, the earliest entry on the ledger is April 2015 ($133.13); a second entry for June 2015 was invoiced for the same amount. Then in August 2016, Defendant was invoiced $3,327.13 by "Shred It." The final invoice reflected on the ledger arises from the December 2017 jobs described above.

To put those dates in further context, Plaintiff points out that the first related case alleging FLSA overtime violations, arising from the Defendant's 7(i) commission policy, was filed in April of 2016.[8] The largest batch of documents destroyed by Defendant followed initiation of this suit by four months. The last batch of documents destroyed in December of 2017 followed not only institution of Plaintiff Alban's suit, but a finding that the documents were relevant and subject to production in a related case against this Defendant. In *Flores v. 2K Clevelander, LLC*,

---

[6] "All correspondence and documents regarding and/or discussing any lost or destroyed…cash out envelopes…" (ECF No. 63-3, Request No. 23).
[7] *Id.* Defendant's Response to Plaintiff's Request No. 23.
[8] *Rivera v. 2K Clevelander, LLC*, No. 16-cv-21437-JLK.

Case No. 16-CV-24083-UU, United States Magistrate Judge Otazo-Reyes conducted a hearing on Plaintiff Flores's motion to compel the production of documents from this Defendant. At the hearing, Defendant presented a banker box containing cash out envelopes and time correction sheets for Plaintiff Flores, as well as for other commissioned employees, generated in one month of their employment. The court compelled production of the box to Plaintiff Flores. *Id.*, ECF No. 43. In so ordering, Judge Otazo-Reyes rejected Defendant's objection on the grounds that it had already produced commission spreadsheets, rendering the documents in the box duplicative of the information produced. *Id.*, ECF No. 52 (transcript of proceedings).[9]

### 1.    The Documents Existed and Were Material to Plaintiff's Claims.

There is no serious debate that Plaintiff has shown that the contested documents, including cash out envelopes and time correction sheets generated during Plaintiff's employment, existed at one time. Plaintiff advanced competent and compelling evidence that he generated end of shift reports at the end of each of his shifts, and submitted the reports in a cash out envelope per Defendant's policy. However, there is not competent evidence from which this Court can find that "time sheet correction sheets" existed or were destroyed with respect to Plaintiff Alban. His affidavit does not so claim, and Plaintiff's counsel conceded at the hearing, that he was not able to prove that Plaintiff Alban in fact prepared any such documents.

In its opposition brief, Defendant represents that the shredded documents were just "receipts," which Judge Moreno has already ruled would not be compelled in this case.[10]

---

[9] The undersigned has taken judicial notice of filed proceedings in the related matters identified by both Parties in their respective briefing. *See Fla. Bd. of Tr. v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975) ("It is not error…for a court to take judicial notice of related proceedings and records in cases before that court.").

[10] Defendant did not attach affidavits to his brief, nor did defense counsel introduce any evidence at the evidentiary hearing. At the evidentiary hearing, the undersigned raised concerns that Defendant's representation, that the shredded documents were restricted to paper receipts, was unsupported by affidavit or other evidence. Defense counsel proffered his belief that receipts were included among the destroyed documents, but contended that he was not involved in the shredding and did not know what was shredded. Counsel's personal knowledge of the contents of the boxes is no replacement for competent testimony from the client, which was never advanced.

Defendant also represents that the information memorialized in those receipts is stored electronically ("the very information that is memorialized on the receipts is stored electronically"), thus rendering the paper versions of the receipts duplicative and thus not necessary to preserve in paper form. This is misleading on two fronts. Defense counsel conceded that the destroyed boxes also contained the cash out envelopes; and further explained that the "electronically stored" information described in the opposition referred to Defendant's commission spreadsheets, not scanned and preserved copies of the destroyed documents.

In order to meet the requirement that the spoliated evidence was "crucial" to the movant's ability to prove its prima facie case or defense, it is not enough that the evidence would have been relevant to a claim or defense. *GMRI*, 2017 WL 5068372, at \*21. In general, only "outcome-determinative evidence" constitutes "crucial" evidence. *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088, at \*5 (S.D. Fla. July 31, 2013). Plaintiff's cash out envelopes, point of sale summaries, and time clock correction sheets are crucial in showing what discrepancies existed between actual hours worked and the number of hours used to calculate Plaintiff's wages. Without these documents, Plaintiff must rely on the commission spreadsheets without having the ability to compare those figures with original documents. Plaintiff contests the accuracy of the data entered from the envelopes and reports were accurately entered into the spreadsheets; as noted in the undersigned's Report and Recommendation on the summary judgment motions in *Alban*, Plaintiff adduced evidence demonstrating that in fact there are a number of inaccurate and irreconcilable differences between the entries made on the commission spreadsheet and the timeclock records (*Alban*, ECF No. 72 at 12-15). Moreover, the documents are crucial to Plaintiff's ability to calculate his damages accurately, as he is without the original documents that show how much he was paid for each shift, again having to rely on a second

level of data in the form of spreadsheets. There is no adequate replacement for the destroyed documents, and for that reason, the undersigned finds that they rise to the level of being "crucial" for spoliation purposes.

Though Defendant's opposition characterized the documents as "meaningless," this is belied by defense counsel's assertion that he wished he had the documents because he believed they would under-cut Plaintiff's claim for off-the-clock work. In so arguing, defense counsel implicitly acknowledges the value of the documents, if Defendant could use the evidence to disprove Plaintiff's claims. *See Long*, 2013 WL 12092088, at *4. The contents of the cash out envelopes similarly constitute evidence that is dispositive of Defendant's affirmative defense. Plaintiff has adduced sworn testimony in support of his motion for summary judgment that the "service charge" Defendant avers was uniformly applied to all checks in fact was subject to exceptions and write offs, which were reflected on the POS summaries generated by the employee at shift end. Defendant denies this practice occurs and, as noted above, the Court has denied summary judgment on the basis of this materially disputed fact. In sum, Defendant has put the documents at issue by denying Plaintiff's sworn statement that the mandatory service charge at the core of Defendant's 7(i) exemption could be waived by comping items from a bill. *Long*, 2013 WL 12092088, at *6.

## 2.    Defendant Destroyed the Documents.

It is beyond dispute that Defendant destroyed the cash out envelopes for Plaintiff Alban; Defense counsel conceded at the hearing that he could not produce Plaintiff Alban's cash out envelopes for any of the time he was employed by the Clevelander. Defendant's corporate representative moreover testified at a hearing conducted on May 9, 2018, that all cash out envelopes for 2014, 2015 and 2016 have been destroyed, except for one box—the one compelled

to be produced in *Flores*, on March 31, 2017. *See* ECF No. 63-2 at 3-4. Coupled with the proof of shredding adduced by Plaintiff, there is no meaningful dispute that Defendant took affirmative steps to destroy the documents at issue.

### 3.     Defendant Had a Duty to Preserve.

At the latest, Defendant's duty to preserve documents relevant to Plaintiff Alban arose when he filed his complaint, on October 25, 2017. Plaintiff argues, persuasively, that Defendant's duty to preserve arose much earlier: related litigation against Defendant had been pending since April 2016. Plaintiff additionally argues that Defendant cannot deny its duty to preserve the boxes of cash out envelopes following the hearing on March 31, 2017, when Judge Otazo-Reyes compelled production of such a box in the *Flores* case. Even if only the latest of these dates is considered, Defendant's duty to preserve the documents it destroyed in December 2017 is without question.

Defendant's argument that it had no duty to preserve is flawed in multiple respects. First, Defendant contends that this Court has already determined that Defendant could not be compelled to produce the documents, thus it had no duty to preserve. In a hearing conducted in this case on Plaintiff Schultze's motion to compel, the Court warned Plaintiff's counsel that he would not get copies of receipts for every drink sold. *See* ECF No. 65 at 5. The Court's statement followed <u>defense counsel's</u> characterization of the documents sought by Plaintiff as "all receipts." Defendant relies on this exchange to substantiate its conclusion that it had no duty to preserve the receipts. There are two problems with Defendant's argument: first, the cited exchange occurred after the destruction of evidence, not before. The hearing conducted on January 19, 2018 could not have served as the basis for Defendant's determination that it had no duty to preserve the documents that it had destroyed the month before. More significantly,

12

Defendant's argument is premised on its representation in the opposition that the documents destroyed were only those receipts, a representation that, as noted above, was not supported by evidence. Nor could it have been, as defense counsel conceded at the evidentiary hearing on this motion that the boxes of documents destroyed included the cash out envelopes.

### 4.    Defendant's Destruction of Documents Involved Bad Faith.

Finally, there is no credible reason advanced for a finding that Defendant did not destroy the documents in bad faith. In this context, "bad faith" is defined by culpability and resulting prejudice. *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1350 (S.D. Fla. 2016) (citing *Flury*, 427 F.3d at 946). Defendant defends its destruction of documents as systematic and regular. Counsel proffered that "every six months they have the receipts shredded along with these envelopes because all the information is extracted off of this on to the payroll reports [commission spreadsheets]."[11] In defense of the shredding, defense counsel argued that it had no duty to preserve; because the documents were duplicative of the commission spreadsheets, Defendant argues, it would be unreasonable for Defendant to incur the burden of storing these records indefinitely. None of these explanations sufficiently give a good reason for shredding relevant documents during ongoing litigation: Defendant had an affirmative duty to ensure that evidence is not destroyed.

The boxes undeniably contained more than just receipts and, as noted above, the Court's January 2018 pronouncement with respect to discoverability of receipts could have played no role in Defendant's decision to shred in December 2017 regardless. Nor could Defendant fairly have believed that the cash out envelopes were duplicative of the spreadsheets, as Judge Otazo-Reyes had implicitly ruled otherwise in compelling Defendant to produce the single remaining

---

[11] Again, Defendant advanced no evidence in its opposition or at the hearing to substantiate what document retention (and destruction) policy was employed by Defendant, nor did Defendant advance evidence of the litigation hold in place, if any.

box of envelopes in March 2017 in the related *Flores* case. And critically, with respect to Plaintiff Alban's records, Plaintiff's requests for the production of these documents in November 2017 specifically sought these precise documents; Defendant's response to the request did not raise an object to relevance or burden, nor did it at that time reveal the destruction of the documents. Only on June 24, 2018, did Defendant produce the ledger showing its payment to "Shred It" and dates of destruction.  The circumstantial evidence supports a finding of bad faith.

Accordingly, spoliation exists that warrant some level of sanctions, and the Court must determine which sanctions are appropriate under the circumstances.  Plaintiff seeks sanctions ranging from striking of pleadings to imposition of an adverse inference to the jury. There are different types of adverse inferences: (1) a jury may be instructed that certain facts are deemed admitted and must be accepted as true; (2) the Court may impose a mandatory, albeit rebuttable, presumption; or (3) the jury must presume that the lost evidence is relevant and favorable to the innocent party, but also consider the spoliating party's rebuttal evidence, and then decides whether to draw an adverse inference. *GMRI*, 2017 WL 5068372, at *22. "Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 523 (S.D. Fla. 2015) (internal citation omitted).

Upon consideration, the undersigned does not recommend striking Defendant's answer or affirmative defenses, the most severe sanction available to a federal court, which "should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice."

14

*Flury*, 427 F.3d at 944. Though the level of culpability here is high, the prejudice to Plaintiff may be cured with lesser sanctions.

Nor does the undersigned recommend the relief Plaintiff characterizes in his motion as "presumptions" or otherwise limiting Defendant's presentation of evidence about the contents of the destroyed evidence. This case differs materially from the circumstances present in *Long*. Unlike the plaintiff in *Long*, both Parties here have had, at some point, the benefit of knowing the contents of the documents: Plaintiff created the POS summary and made his own notations, including timeclock corrections; Defendant reviewed the data as part of populating the commission spreadsheets. While neither can now bolster their credibility by showing the jury what the documents memorialized as a result of Defendant's spoliation, neither side is prejudiced by not at least knowing what the documents showed. Because Plaintiff is not deprived of the ability to offer his own testimony and description of the destroyed cash out envelopes, the undersigned does not recommend imposition of the fact-specific "presumptions" he would have the Court instruct the jury to find.[12]

Instead, the undersigned recommends the provision of an adverse inference instruction that the evidence destroyed would have been favorable to Plaintiff Alban. *See Se. Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1302 (M.D. Fla. 2009) (declining to impose spoliation sanctions in form of default judgment, but instead imposing adverse inference against spoliator). Plaintiff is entitled to the presumption that the lost evidence was relevant and favorable to Plaintiff, and disadvantageous to Defendant. *See id.*; *Swofford v. Eslinger*, 671 F. Supp. 2d 1274,

---

[12] Those include: "The Clevelander failed to properly correct Plaintiff's time clock errors, resulting in under-recording of Plaintiff's hours worked; The Clevelander failed to pay Plaintiff for all of the hours that he worked; The Clevelander failed to pay Plaintiff for all wages owed; The Clevelander failed to comply with FLSA recordkeeping requirements; The Clevelander customers removed 'service charges' from receipts at their discretion." ECF No. 63 at 20.

1289 (M.D. Fla. 2009) (imposing adverse inference against spoliating party, instructing jury to infer that deleted emails contained information detrimental to spoliator).

This is the "least harsh sanction to cure the prejudice" to Plaintiff. *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1351 (S.D. Fla. 2016). As in *Austrum*, destruction of the documents pits Plaintiff's word against Defendant's on the key issue of whether the service charge was waived at customer request; it also deprives Plaintiff of the ability to prove that his cash out envelopes memorialize more hours worked than what Defendant entered into the spreadsheet for him. The prejudice can be cured by a rebuttable presumption that it may be inferred from Defendant's destruction of the evidence that it was unfavorable to Defendant.

## III.   CONCLUSION

The undersigned recommends granting Plaintiff's motion in part and recommends that the Court give an adverse inference instruction to the jury, specifically, that Defendant destroyed the cash out envelopes and that it may infer that the documents destroyed were unfavorable to Defendant and favorable to Plaintiff.

Pursuant to Local Magistrate Rule 4(b), the Parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the Parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the Parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** this 4th day of October, 2018.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE